202 P.3d 1004 (2009)
STATE of Washington, Respondent,
v.
Tarig Mohammed A. ALJUTILY, Appellant.
No. 27190-1-III.
Court of Appeals of Washington, Division 3.
March 12, 2009.
*1005 Steven P. Martonick, Snyder & Martonick Law Offices, P.S., Pullman, WA, for Appellant.
Byron Bedirian, Prosecutor's Office, Colfax, WA, for Respondent.
KULIK, J.
¶ 1 Tarig Mohammed A. Aljutily appeals his felony conviction for communication with a minor for immoral purposes. Mr. Aljutily argues that RCW 9.68A.090, which prohibits "communicat[ions] with a minor or with someone the person believes to be a minor for immoral purposes through the sending of an electronic communication," is unconstitutionally overbroad and burdens protected speech. We conclude that the statute is not unconstitutionally overbroad and, therefore, affirm Mr. Aljutily's conviction.

FACTS
¶ 2 In October 2007, Tarig Mohammed A. Aljutily was charged with one count of communication with a minor for immoral purposes, a class C felony. The information specifically alleged that Mr. Aljutily "did communicate with a person he believed to be under the age of 18 years (an individual identified by the computer screen name `emmastar90') through the sending of an electronic communication, for immoral purposes of a sexual nature; contrary to Revised Code Washington 9.68A.090(1)."[1] Clerk's Papers (CP) at 1. The following facts are undisputed.
¶ 3 On May 15, 2006, the Washington State University Police Department created a MySpace page using the fictitious name Amber McCabe. The MySpace page described Amber McCabe as a 13-year-old girl living in Pullman, Washington. The MySpace page also listed a Yahoo instant messenger account that Amber had under the name "emmastar90." CP at 42. Yahoo instant messenger is a form of electronic communication on the Internet.
¶ 4 Officer Mike Crow of the Pullman Police Department and Officer Stewart of the Washington State University Police Department, posing as Amber, were the actual users of the Yahoo instant messenger account emmastar90. Mr. Aljutily contacted Amber through her MySpace profile and later through the Yahoo instant messenger account listed on her MySpace page, emmastar90, using his instant messenger screen name "nice very nice." CP at 42.
¶ 5 On February 22, 2007, Mr. Aljutily contacted emmastar90 through Yahoo instant messenger and initiated an instant messaging conversation. Officer Stewart responded as Amber, and asked Mr. Aljutily how old he was. Mr. Aljutily replied "`i so old is it ok with you talking to old guys.'" CP at 42. Emmastar90 replied, "`its ok with me if its ok talking to a 13yo.'" CP at 42. Mr. Aljutily replied, "`yah its ok with me.'" CP at 42.
¶ 6 On February 26, Mr. Aljutily, again using the screen name nice very nice on Yahoo instant messenger, contacted emmastar90. He asked Amber "`how is school and your mom.'" CP at 42. He then asked if *1006 her mom was busy. Emmastar90 sent him a message asking, "`are u ok that Im only 13?'" CP at 42. Mr. Aljutily replied "`you want the truth i'm not ok'" and then went on to ask, "`is it ok with you.'" CP at 42. Emmastar90 replied, "`ya . . . only if it ok with you.'" CP at 42. Mr. Aljutily then explained that it was dangerous to have sex with a young girl because she was not 18 years old. He also expressed concern that her mother would become aware of it.
¶ 7 Mr. Aljutily sent another message saying, "`i don't know i want to have sex with you but your young that sucks.'" CP at 43. After discussing a movie, Mr. Aljutily stated, "`yeb I will invit you if you can go with me.'" CP at 43. Emmastar90 stated, "`maybe,'" and Mr. Aljutily replied "`after the movie we can go in the car and have some fun.'" CP at 43. Mr. Aljutily then described in detail how they would have oral sex, vaginal sex, anal sex, and his desire to have sex with her.
¶ 8 Mr. Aljutily then sent emmastar90 a picture of his penis over the Internet using his webcam, and pictures of him masturbating. He also sent emmastar90 links to two pornographic website videos showing adults engaged in sexual intercourse.
¶ 9 After a bench trial on stipulated facts, the trial court entered findings of fact and conclusions of law. The trial court concluded that the conversation between Mr. Aljutily and Amber "clearly established that he believed that emmastar90 was a 13 year old girl." CP at 44. It further concluded that "[Mr. Aljutily's] conversation on February 26, 2007 with emmastar90 on Yahoo instant messenger, the sending of the photo of his penis, and the sending of the two pornographic links was communication done for immoral purposes." CP at 44. In addition, the trial court concluded that the entire communication that Mr. Aljutily had with Amber was done through the sending of electronic communications. Mr. Aljutily was found guilty as charged. This appeal followed.

ANALYSIS
¶ 10 The sole issue on appeal is whether RCW 9.68A.090 is overbroad and infringes on constitutionally protected areas of speech under the First Amendment to the United States Constitution and article I, section 5 of the Washington Constitution. Mr. Aljutily contends that the statute violates the overbreadth doctrine because (1) it penalizes communication with someone the person believes to be a minor without requiring that the belief be somehow objectively manifested, and (2) because there is no scienter required when the communication involves an actual minor. Mr. Aljutily claims there is no requirement in the statute that when an actual minor is involved, the speaker know that the minor is in fact a minor.
¶ 11 RCW 9.68A.090 provides:
(1) Except as provided in subsection (2) of this section, a person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor.
(2) A person who communicates with a minor for immoral purposes is guilty of a class C felony . . . if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes through the sending of an electronic communication.
¶ 12 A statute is presumed constitutional and the party challenging a statute carries the burden of proving its unconstitutionality beyond a reasonable doubt. Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991). Where possible, this court must interpret a challenged statute in a manner that upholds its constitutionality. City of Seattle v. Webster, 115 Wash.2d 635, 641, 802 P.2d 1333 (1990). "Therefore, the presumption in favor of a law's constitutionality should be overcome only in exceptional cases." City of Seattle v. Eze, 111 Wash.2d 22, 28, 759 P.2d 366 (1988).
¶ 13 In general, the First Amendment prevents the government from prohibiting speech or expressive conduct. State v. Halstien, 122 Wash.2d 109, 121, 857 P.2d 270 (1993) (citing R.A.V. v. City of St. Paul, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305, 317 (1992)). "A law is overbroad if it sweeps within its prohibitions free speech activities *1007 protected under the First Amendment." Id. at 122, 857 P.2d 270.
¶ 14 The First Amendment overbreadth doctrine is "aimed at preventing any `chilling' of constitutionally protected expression." Id. "As a result, courts will permit facial overbreadth challenges when the statute in question chills or burdens constitutionally protected conduct." Id. Application of the overbreadth doctrine, however, should be employed by a court sparingly, and then only as a last resort. O'Day v. King County, 109 Wash.2d 796, 804, 749 P.2d 142 (1988) (quoting New York v. Ferber, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)).
¶ 15 In conducting an overbreadth analysis, a court's first task is to determine whether the statute reaches a substantial amount of constitutionally protected speech or conduct. City of Tacoma v. Luvene, 118 Wash.2d 826, 839, 827 P.2d 1374 (1992). Criminal statutes in particular are given careful scrutiny and may be facially invalid if they "`make unlawful a substantial amount of constitutionally protected conduct . . . even if they also have legitimate application.'" City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989) (quoting City of Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)).
¶ 16 A statute which regulates behavior, and not pure speech, "`will not be overturned unless the overbreadth is "both real and substantial in relation to the ordinance's plainly legitimate sweep."'" Webster, 115 Wash.2d at 641, 802 P.2d 1333 (quoting Eze, 111 Wash.2d at 31, 759 P.2d 366). Therefore, even if a statute is "substantially overbroad," it will not be overturned on overbreadth grounds unless the court is unable to place a sufficiently limiting construction upon the statute. Halstien, 122 Wash.2d at 123, 857 P.2d 270. Importantly, the "`mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" United States v. Williams, ___ U.S. ___, 128 S.Ct. 1830, 1844, 170 L.Ed.2d 650 (2008) (quoting Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)).
¶ 17 Here, Mr. Aljutily relies on the recent United States Supreme Court decision in Williams. He argues that the Court's opinion is relevant to an overbreadth analysis of RCW 9.68A.090.
¶ 18 In Williams, the Court analyzed an overbreadth and vagueness challenge to 18 U.S.C. § 2252A(a)(3)(B), a federal statutory provision criminalizing pandering or solicitation of child pornography. Williams, 128 S.Ct. at 1834. Generally, 18 U.S.C. § 2252A(a)(3)(B) prohibits offers to provide, and requests to obtain, child pornography. Williams, 128 S.Ct. at 1838. The statute, however, does not require the actual existence of child pornography. Id. "Rather than targeting the underlying material, this statute bans the collateral speech that introduces such material into the child-pornography distribution network." Id. at 1838-39. The Court noted that as a result, both a user who solicits child pornography over the Internet from an undercover agent, even if the officer possesses no child pornography, as well as a person who advertises virtual child pornography as depicting actual children, violate the statute. Id. at 1839.
¶ 19 Mr. Aljutily focuses on language in the statute at issue in Williams, arguing that it penalizes speech with similar belief elements. Specifically, 18 U.S.C. § 2252A(a)(3)(B) prohibits the advertisement, distribution, and solicitation of "any material or purported material in a manner that reflects the belief" that it contains child pornography. (Emphasis added.) The Court upheld the constitutionality of the statute in Williams, concluding that a number of the statute's features were important to its analysis. Williams, 128 S.Ct. at 1839. Mr. Aljutily argues that two of the five Williams factors are especially relevant.
¶ 20 First, the statute upheld in Williams included a scienter requirement. Id. The Court held that the term "knowingly" in the statute applied to every element of the challenged provision. Id. Second, the Court construed the phrase "in a manner that reflects the belief" to include both subjective and objective components. Id. at 1840. Consequently, *1008 the defendant must actually have held the subjective "belief" that the material or purported material was child pornography, and the statement or action must objectively manifest that belief. Id. The Court also held that "a mere belief, without an accompanying statement or action that would lead a reasonable person to understand that the defendant holds that belief, is insufficient." Id. As thus construed, the Court held that the statute did not criminalize a substantial amount of protected expressive activity, as offers to engage in illegal transactions are categorically excluded from First Amendment protection. Id. at 1841.
¶ 21 In light of the Court's analysis in Williams, Mr. Aljutily first argues that RCW 9.68A.090 lacks a scienter requirement when the communication involves an actual minor. Mr. Aljutily claims that the statute effectively shifts the burden to the defendant to prove that his or her communications with the minor were inadvertent, defeating the protective purpose of the overbreadth doctrine.
¶ 22 Mr. Aljutily argues that RCW 9.68A.090 penalizes the mere subjective belief that the speaker believes the listener is a minor and that the statute lacks the requisite scienter where actual minors are involved. He maintains that the risk of prosecution under the statute chills the expression of protected speech sufficiently to render the statute overbroad and, therefore, unconstitutional. We disagree.
¶ 23 RCW 9.68A.090(2) applies to a "person [who] communicates with a minor or with someone the person believes to be a minor for immoral purposes." In addition, RCW 9.68A.110(3) provides that in a prosecution under RCW 9.68A.090 "it is not a defense that the defendant did not know the alleged victim's age." That statute also provides that it is a defense, which the defendant must prove by a preponderance of the evidence, that he or she made a reasonable and bona fide attempt to ascertain the true age of the minor and did not rely solely on the oral assertions or apparent age of the minor. RCW 9.68A.110(3).[2]
¶ 24 Our Supreme Court clarified that RCW 9.68A.090 is designed to prohibit "communication with children for the predatory purpose of promoting their exposure to and involvement in sexual misconduct." State v. McNallie, 120 Wash.2d 925, 933, 846 P.2d 1358 (1993) (emphasis added). The court explained that the legislative finding which introduces chapter 9.68A RCW places great importance on the prevention of sexual exploitation and abuse of children. RCW 9.68A.001. This chapter of our criminal code reflects the legislature's intent to protect children from exposure to sexual misconduct for the personal gratification of another. McNallie, 120 Wash.2d at 933, 846 P.2d 1358.
¶ 25 In State v. Hosier, 157 Wash.2d 1, 8, 133 P.3d 936 (2006), the court defined the term "communicate" in the statute to mean both transmission and reception of a message to a minor for immoral purposes. The court explained: "Unless a person's message is both transmitted by the person and received by the minor, the person has not communicated `with children,' the act the statute is designed to prohibit and punish." Id.
¶ 26 In addition, "the State must prove that the defendant intended that the communication reach the child." Id. at 15, 133 P.3d 936. And, the defendant must have the "predatory purpose" of promoting a minor's exposure and involvement in "sexual misconduct" in making the communication, as required by McNallie. Id. at 11-12, 133 P.3d 936.
¶ 27 As case law makes clear, RCW 9.68A.090 prohibits communication, by words or conduct that is: (1) done for immoral purposes, (2) intended to reach a minor, and (3) received by a minor, or someone the person believed to be a minor. RCW 9.68A.090 does not prohibit or deter a substantial *1009 amount of protected speech or conduct, and has been construed by our Supreme Court in a sufficiently limited manner.
¶ 28 Mr. Aljutily's argument overlooks the State's burden to prove that the defendant intended that the communication reach a minor. Hosier, 157 Wash.2d at 15, 133 P.3d 936. As the State persuasively argues, this limits the breadth of the statute and allows adults who do not intend to communicate with children to engage in communications of a sexual nature without fear of prosecution. The statute applies only if one intends that an immoral communication reach a minor and it actually does reach a minor or someone he or she believes to be a minor.
¶ 29 The requirements that the communication be made with the intent that it reach a minor, and done with the immoral or predatory purpose of exposing or involving a minor in sexual misconduct, sufficiently limits the amount of speech or conduct that the statute regulates and ensures that a substantial amount of protected expressive activity is not deterred. The anonymous sexual Internet communication that Mr. Aljutily argues would be chilled by the statute can be accomplished freely and without threat of felony prosecution when the intent is to communicate with other adults, not minors.
¶ 30 In conclusion, RCW 9.68A.090 is not overbroad under either the First Amendment or article I, section 5 of the Washington Constitution. The scope of RCW 9.68A.090 is limited to immoral communication intended for minors and does not reach a substantial amount of constitutionally protected speech or conduct.
¶ 31 We affirm Mr. Aljutily's conviction for communication with a minor for immoral purposes.
WE CONCUR: SCHULTHEIS, C.J., and BROWN, J.
NOTES
[1] Due to an apparent scrivener's error, the information erroneously refers to RCW 9.68A.090(1) while the proper statute is RCW 9.68A.090(2). The parties, however, do not raise any issues related to this error. CrR 7.8(a).
[2] RCW 9.68A.110(3) provides in pertinent part:

In a prosecution under . . . [RCW] 9.68A.090. . . it is not a defense that the defendant did not know the alleged victim's age: PROVIDED, That it is a defense, which the defendant must prove by a preponderance of the evidence, that at the time of the offense, the defendant made a reasonable bona fide attempt to ascertain the true age of the minor by requiring production of a driver's license, marriage license, birth certificate, or other governmental or educational identification card or paper and did not rely solely on the oral allegations or apparent age of the minor.