31 P.3d 47 (2001)
STATE of Washington, Respondent,
v.
Molotov F. PAULING, Appellant.
No. 46492-2-I.
Court of Appeals of Washington, Division 1.
September 17, 2001.
*48 Thomas Kummerow, Washington Appellate Project, Seattle, for Appellant.
Seth A. Fine, Snohomish County Deputy Prosecutor, Everett, for Respondent.
GROSSE, J.
A statute that defines the word "threat" to include the communication of information that is not inherently wrong or unlawful sweeps too broadly to withstand constitutional challenge. Washington's extortion statute is overbroad because it is not limited to wrongful threats and does not include any defenses that would limit its reach. Thus, it substantially burdens a wide range of protected speech. Therefore, we are compelled to declare the statute invalid and reverse the conviction in this case.

FACTS
Molotov Pauling and his girl friend Jane Doe began a relationship in Washington and moved to Miami, Florida where they lived together for several months in 1998. In August 1998 Jane Doe terminated the relationship and returned to Washington. She left behind sexually explicit photographs of herself. Pauling sent copies of the photographs to Jane Doe's parents and claimed to have also sent them to her family, friends, and employers.
Pauling said that Jane Doe owed him money and that three months after she returned to Washington he obtained a default judgment against her in small claims court in Florida in the amount of $5,000. Sometime thereafter, Pauling returned to Washington and filed his Florida default judgment in a Snohomish County district court.
In February of 1999, Pauling sent Jane Doe a letter stating that the sooner she paid the debt the sooner she would be "free of this." Pauling's letter indicated that the photographs had been displayed on the Internet and he threatened to put Jane Doe's address on the Internet so her fans could contact her in person. Jane Doe's neighbors received letters purportedly from her that introduced her as a porn star, included copies of the photographs, and listed an Internet address. The letters were sent by Pauling. In June of 1999, Pauling sent Jane Doe another letter demanding payment of the debt. He stated that if she paid the debt he would be out of her life and that he hoped it wouldn't be necessary for him to let her neighbors know what kind of a person she was.
At a bench trial the court convicted Pauling on two of three counts of extortion in the second degree. This appeal followed.

*49 DISCUSSION
Pauling claims his conviction for extortion in the second degree should be overturned because the extortion statute is unconstitutionally overbroad.[1] A statute is overbroad when it infringes upon constitutionally protected speech.[2] Ordinarily a defendant may not challenge a statute as unconstitutional unless the defendant's conduct is within the range of constitutionally protected acts.[3] However, a defendant may challenge a statute for overbreadth even if the defendant's own conduct was not protected because prior restraints on freedom of speech pose a greater harm to society than the possibility that some unprotected speech will not be punished.[4]
Under an overbreadth analysis, criminal laws are invalid if they prohibit a substantial amount of protected conduct, despite the fact that they may also have legitimate applications.[5] However, we will not overturn statutes that regulate behavior rather than pure speech, unless the overbreadth is real and substantial in relation to the ordinance's plainly legitimate sweep.[6] Unfortunately, Washington's extortion statute prohibits a substantial amount of protected conduct and is overbroad.
Pauling was convicted of extortion in the second degree under RCW 9A.56.130. That statute provides in part:
(1) A person is guilty of extortion in the second degree if he commits extortion by means of a threat as defined in RCW 9A.04.110(25)(d) through (j).
RCW 9A.56.110 defines extortion:
"Extortion" means knowingly to obtain or attempt to obtain by threat property or services of the owner, and specifically includes sexual favors.
The definition of "threat" is included in RCW 9A.04.110:
(25) "Threat" means to communicate, directly or indirectly the intent:
. . . .
(d) To accuse any person of a crime or cause criminal charges to be instituted against any person; or
(e) To expose a secret or publicize an asserted fact, whether true or false, tending to subject any person to hatred, contempt, or ridicule; or
(f) To reveal any information sought to be concealed by the person threatened; or
(g) To testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or
(h) To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or
(i) To bring about or continue a strike, boycott or other similar collective action to obtain property which is not demanded or received for the benefit of the group which the actor purports to represent; or
(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships[.][[7]]
In City of Seattle v. Ivan, this court invalidated a coercion provision of the Seattle Municipal *50 Code because the definition of "threat" rendered it unconstitutionally overbroad.[8] The language in the Seattle Municipal Code was substantially similar to the definition of "threat" at issue here. The court concluded that the ordinance could not be saved by grafting an intent element onto it; that the ordinance was not susceptible of a narrowing construction; and that the court could not sever the unconstitutional portions without improperly rewriting the statute.[9] However, the court in Ivan did distinguish the coercion statute from extortion statutes. Indeed, the court in Ivan cited the Oregon Supreme Court in State v. Robertson which noted that extortion statutes are generally upheld because extortion requires a defendant to unlawfully cause a victim to give up property so that extortion is an extension of theft.[10]
Unlike the extortion laws in the cases referred to in Robertson, the Washington statute does not contain an unlawfulness element. Nor does it contain any of the other restrictive components that preserve other extortion statutes. Under common law, extortion was not overbroad because it was generally defined as the "unlawful taking by a public officer, under color of office, of any money or thing of value that is not due to the officer, or more than is due, ... under circumstances not amounting to robbery."[11] Thus, it was limited to unlawful conduct of public officials acting in their official capacity and did not prohibit protected conduct.
The Model Penal Code (MPC) includes a provision for theft by extortion.[12] The language of that provision includes a list of prohibited threats similar to those in the Washington statute. Like the Washington statute, the MPC does not limit the threats to those that are unlawful. The drafters of the MPC felt that the prohibition should be broader than threats of unlawful harm, and that statutes which require the threatened harm to be unlawful have "given rise to difficulties and conflicting interpretations."[13] But, the MPC also includes the following affirmative defense:
It is an affirmative defense to prosecution based on paragraphs (2), (3) or (4) that the property obtained by threat of accusation, exposure, lawsuit or other invocation of official action was honestly claimed as restitution or indemnification for harm done in the circumstances to which such accusation, exposure, lawsuit or other official action relates, or as compensation for property or lawful services.[[14]]
Unlike the MPC, the Washington statute lacks any such defense.
Under federal law, extortion is limited to a "wrongful" threat.[15] While the court in United States v. Jackson did not consider an overbreadth challenge to extortion, it did recognize that there are many types of threats to engage in speech which would damage another person's reputation but should not be prohibited even when such threats are used to obtain money.[16] Thus, the court held that wrongfulness was a necessary element of extortion.
*51 The statutory language considered by the court in Jackson did not contain a definition of extortion. The court noted that Congress was inconsistent in whether or not it used the word "wrongful" in extortion provisions.[17] However, the court in Jackson went on to conclude that the inconsistency did not indicate Congressional intent because where the federal statutes included a definition of extortion wrongfulness is made explicit and in most instances where "wrongful" is not used the proscribed acts were inherently wrongful.[18] As a result, the court concluded that under federal law the word "extort" included wrongfulness.
Washington's extortion statute can be distinguished from federal law with regard to the element of wrongfulness. Unlike the federal statute considered in Jackson, Washington has a statutory definition of extortion, and that definition does not include wrongfulness. Washington has no other statutes dealing with extortion that include "wrongfulness." The definition of "threat" under subsection (h) includes the word "wrongful" while the definitions in the other subsections do not. This suggests the Legislature chose not to include "wrongful" in those sections.
Without doubt, Pauling's conduct was wrongful. A "wrongful act" is "[a]ny act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right."[19] Pauling's acts were wrongful because they constituted both the tort of defamation and of intentional infliction of emotional distress. His acts may also constitute the tort of invasion of privacy.
Nonetheless, for the reasons indicated, the Washington statute does not contain a wrongfulness element. Nor can this court engraft or imply such an element. Courts have on occasion engrafted an element of criminal intent onto statutes because criminal intent is ordinarily an element of crimes, even where crimes are created by statute.[20] This reasoning does not apply to elements unrelated to intent such as wrongfulness. Moreover, the parties do not cite, nor could we find any, cases where elements other than intent have been implied in a criminal statute in Washington.
The State relies upon State v. Burns to argue that extortion in Washington contains a mala fides requirement.[21]Burns is inapplicable because it interpreted extortion under the common law and not the current statute which differs substantially from the common law.
The State also argues that the statute is not overbroad because it is limited to threats used to obtain money or property of another. However, there are a number of threats to obtain money that appear to be reasonable and protected speech that would fall within the scope of Washington's statute. The following are a number that readily come to mind. The letters in parentheses preceding the following examples indicate the relevant subsections of the "threat" definition in RCW 9A.04.110(25) to which the example corresponds.
(d) "If you don't pay for the value of my property that you vandalized I am going to report you to the police."
(e) "I have put up for auction and am accepting bids for papers I possess that reveal salacious secrets regarding celebrity X." This could be interpreted as a threat to the celebrity to reveal the private information if the celebrity did not submit the winning bid.
(f) "If you want to have an unlisted telephone number the fee is $50 per year."
(g) Expert witness: "I will not testify until my fee is paid."

Non-expert witness: "I am not going to testify unless you pay my travel expenses."
(i) Labor activist: "U.S. labor unions will organize a boycott of your retail stores unless you pay your Third World employees *52 at least 30 percent of the prevailing U.S. wage for textile workers."

Environmental activist: "We will organize a boycott of your coffee if you don't pay a higher price for coffee beans from independent farmers of shade grown coffee."
(j) Regarding "business"consumer to vendor: "If you don't give me a refund for the defective product I purchased I will complain to the Better Business Bureau, the attorney general, and the consumer advocate at the local newspaper."

Large company to the management of a small competitor: "If you don't agree to be acquired by us we are going to spend $150 million developing a product and business relationships that will compete with yours." "If you don't agree to sell out to us at the price we demand, we will attempt a hostile takeover and replace you with more sympathetic directors and management."

Regarding financial conditionlarge minority shareholder: "If you don't repurchase my shares at my purchase price, I am going to bring a class action shareholder suit for breach of fiduciary duty."
Washington's extortion statute substantially burdens a wide range of protected speech. There is no question that Pauling's action was outrageous and should have been subject to criminal sanction. But, because the extortion statute is impossibly overbroad and restricts a wide range of protected speech, we are compelled to invalidate it.
We reverse the conviction.
COLEMAN, J., and BECKER, A.C.J., concur.
NOTES
[1] Pauling raises his challenge under both the constitutions of the United States and Washington, but he acknowledges that the standard of review is identical. See City of Seattle v. Huff, 111 Wash.2d 923, 928, 767 P.2d 572 (1989).
[2] Huff, 111 Wash.2d at 925, 767 P.2d 572 (citing Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)).
[3] See Broadrick v. Oklahoma, 413 U.S. 601, 610-13, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).
[4] Broadrick, 413 U.S. at 612, 93 S.Ct. 2908; Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).
[5] City of Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). See also City of Seattle v. Ivan, 71 Wash.App. 145, 150, 856 P.2d 1116 (1993).
[6] City of Seattle v. Webster, 115 Wash.2d 635, 641, 802 P.2d 1333 (1990) (citing Broadrick, 413 U.S. at 615, 93 S.Ct. 2908).
[7] The information charged Pauling under the language of subsections (e) and (j).
[8] City of Seattle v. Ivan, 71 Wash.App. 145, 856 P.2d 1116.
[9] Ivan, 71 Wash.App. at 157-59, 856 P.2d 1116.
[10] Ivan, 71 Wash.App. at 154, 856 P.2d 1116 (citing State v. Robertson, 293 Or. 402, 649 P.2d 569 (1982) (invalidating as overbroad a coercion statute that listed types of threats similar to those at issue here)).
[11] 31a Am.Jur.2d Extortion, Blackmail, and Threats § 1, at 594-95 (1989).
[12] Model Penal Code § 223.4, at 150-51 (Official Draft & Explanatory Notes 1985).
[13] Model Penal Code pt. II, § 223.4(d), at 208 (Official Draft & Revised Cmts.1980).
[14] Model Penal Code § 223.4, at 151 (Official Draft & Explanatory Notes 1985). Paragraphs (2), (3), and (4) of the MPC version pertain to: (2) an accusation of a criminal offense, (3) expose a secret, and (4) the action or withholding of action by a public official.
[15] United States v. Jackson, 180 F.3d 55, 69 (2d Cir.1999).
[16] Jackson, 180 F.3d at 67. The court gave examples of threats to make complaints to consumer advocates, or of a private club to post a list of the names of members who have not paid dues.
[17] Jackson, 180 F.3d at 67.
[18] Jackson, 180 F.3d at 67.
[19] Black's Law Dictionary 1788 (4th ed.1968).
[20] 21 Am.Jur.2d Criminal Law § 129 (1998).
[21] State v. Burns, 161 Wash. 362, 297 P. 212, 1 P.2d 229 (1931).