69 P.3d 331 (2003)
149 Wash.2d 381
STATE of Washington, Petitioner.
v.
Molotov F. PAULING, Respondent.
No. 71794-0.
Supreme Court of Washington, En Banc.
Argued June 27, 2002.
Decided May 22, 2003.
*332 David Thiele, Everett, James Krider, Snohomish County Prosecutor, Seth Fine, Deputy, Everett, for Petitioner.
Washington Appellate Project, Thomas Kummerow, Seattle, for Respondent.
IRELAND, J.
Molotov Pauling was convicted of second degree extortion under former RCW 9A.56.130 (1975) for threatening to disseminate and, in actuality, disseminating nude photos of a former girl friend to collect a valid $5,000 small claims court judgment he had against her. The Court of Appeals, stating that the statute lacked a requirement that the threat be wrongful, declared former RCW 9A.56.130 unconstitutionally overbroad because it prohibited threats that constituted protected speech and reversed Pauling's conviction. We hold that a limiting construction is available, requiring that the evidence shows a "lack of nexus" between the threat made and the claim of right. This construction confines the statute's application to only extortionate threats that are inherently wrongful and are not protected speech. We therefore reverse the Court of Appeals and reinstate Pauling's conviction and sentence.

FACTS
Molotov Pauling and Jane Doe began a romantic relationship in Washington in 1997. In March 1998, sometime after Pauling's employer transferred him to Florida, Doe also moved to Florida and resided with Pauling *333 until the relationship ended in August 1998. Doe later moved back to Washington.
She left behind several sexually explicit photographs of herself, in which she was nude and having sexual contact with another man. Pauling called Doe telling her he had the photos and threatened to send them to everyone he knew. Pauling admits he sent the photos to her family, friends, and employers with a letter claiming to be telling them "what kind of person that [Doe] ... truly is." 1 Report of Proceedings (RP) at 59-61; Clerk's Papers (CP) at 38. Some of the letters Pauling sent were returned to Doe as Pauling had put her return address on them to make it appear as if she had sent them.
Pauling obtained a small claims court default judgment against Doe which he subsequently filed in Snohomish County when his employer transferred him back to Washington. In December 1998, Pauling began to threaten that he would continue to send the photos unless Doe paid him the $5,000 judgment.
On February 8 or 9, 1999, Doe received a letter from Pauling, mailed from Washington, that read, in part:
[A]s you well know, running is not the answer. The sooner you pay your debt, the sooner you can be free of this. Have your boyfriend get a loan for you. The Bronco must be worth something. However, if he will not, send me more photos, new ones. Maybe they can be worth money. You are now on three web pages. I know you're proud. Should I also put your address on the web pages so your fans can contact you in person? You are famous.
1 RP at 77. This letter forms the basis of count one. On the same days, Doe's neighbors also received letters, sent by Pauling but purportedly sent by Doe, introducing her as a pornographic star that included one of the photos and gave a web address where the letter said more nude photos of her were available. Approximately one week later, other neighbors received identical letters, again sent by Pauling but purportedly from Doe. In June 1999, Pauling sent an invoice to Doe for the $5,000.
On June 29, 1999, Doe found a note on her car that read, "Contact me." She also received a letter that read:
You can run, however, you can't hide. I want to know, when do you plan on paying the debt you owe me? As I said before, just pay me the money you owe and I will be out of your life. Think about it. No more letters from me. And trust me, even with me in Florida, I can find you. I have many friends in Seattle. I'm hoping not to make it my business to let everyone who lives around you know what kind of person you really are, the people in 312, 311, 309, 308, 307, etc. .... Go back to [your husband] and get him to pay your debt....
CP at 39, 40. This letter forms the basis for count two. Pauling also sent a letter to Doe's husband on July 6 or 8, 1999 demanding payment from him for the $5,000. When he was finally arrested, Pauling claimed that he did not have an opportunity to take legal action to recoup the $5,000 anytime between December 1998 and August 1999. In whole, Pauling estimated that he had sent copies of the nude photographs to at least 20 people, friends, and neighbors of Doe, none of whom he knew.
Procedural History
Pauling was charged with three counts of second degree extortion. The third count was dropped, but Pauling was convicted by a bench trial on the other two. The trial court found that Pauling had knowingly and intentionally attempted to obtain money from Doe by a threat that communicated an intent to expose a secret that tended to subject Doe to hatred, contempt or ridicule. The court further found that the threat was intended to substantially harm Doe in her business or personal relationships. Pauling was sentenced to 90 days on each count to run concurrently. The sentence was to be served in partial confinement on work release.
Pauling appealed to the Court of Appeals on the grounds that the extortion statute, under which he was convicted, was unconstitutionally overbroad. The Court of Appeals agreed in State v. Pauling, 108 Wash.App. 445, 454, 31 P.3d 47 (2001) and the State has *334 appealed. Pauling's sentence has been stayed pending this appeal.

ISSUES
Whether Washington's extortion statute encroaches upon a real and substantial amount of free speech.
If so, would a limiting construction of the statute curtail any unconstitutional infringement on protected speech?

ANALYSIS
Standard of Review
Several well-established principles guide the analysis in this case. A law is presumed constitutional. State v. Crediford, 130 Wash.2d 747, 752, 927 P.2d 1129 (1996). A statute is overbroad if it prohibits constitutionally protected speech. City of Seattle v. Eze, 111 Wash.2d 22, 31, 759 P.2d 366 (1988). A law will be invalidated on its face for overbreadth only if it is "substantially overbroad." City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989) (citing New York v. Ferber, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). "Criminal statutes require particular scrutiny and may be facially invalid if they `make unlawful a substantial amount of constitutionally protected conduct ... even if they also have legitimate application.'" Huff, 111 Wash.2d at 925, 767 P.2d 572 (quoting City of Houston v. Hill, 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)). A defendant may challenge a statute on grounds of overbreadth even if his own conduct is not constitutionally protected because prior restraints on free speech pose a greater harm to society than the possibility that some unprotected speech will go unpunished. Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). A statute will be invalidated only if the court is unable to limit sufficiently its standardless sweep by a limiting construction. City of Tacoma v. Luvene, 118 Wash.2d 826, 840, 827 P.2d 1374 (1992).
Overbreadth Analysis
The relevant sections of the Revised Code of Washington, applicable at the time of Pauling's offense, are set out below:[1]
9A.56.130 Extortion in the second degree. (1) A person is guilty of extortion in the second degree if he commits extortion by means of a threat as defined in RCW 9A.04.110(25)(d) through (j).
(2) In any prosecution under this section based on a threat to accuse any person of a crime or cause criminal charges to be instituted against any person, it is a defense that the actor reasonably believed the threatened criminal charge to be true and that his sole purpose was to compel or induce the person threatened to take reasonable action to make good the wrong which was the subject of such threatened criminal charge.
....
9A.56.110 ExtortionDefinition.
"Extortion" means knowingly to obtain or attempt to obtain by threat property or services of the owner, and specifically includes sexual favors.
9A.04.110 Definitions.
(25) "Threat" means to communicate, directly or indirectly the intent:
....
(d) To accuse any person of a crime or cause criminal charges to be instituted against any person; or
(e) To expose a secret or publicize an asserted fact, whether true or false, tending to subject any person to hatred, contempt, or ridicule; or
(f) To reveal any information sought to be concealed by the person threatened; or
(g) To testify or provide information or withhold testimony or information with respect *335 to another's legal claim or defense; or
(h) To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or
(i) To bring about or continue a strike, boycott, or other similar collective action to obtain property which is not demanded or received for the benefit of the group which the actor purports to represent; or
(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships[.]
Former RCW 9A.56.130 (1975); RCW 9A.56.110, RCW 9A.04.110(25)(d)(j) (emphasis added).
Evaluation of Pauling's overbreadth claim requires us to determine whether the statute prohibits a substantial amount of constitutionally protected activity. See Luvene, 118 Wash.2d at 841, 827 P.2d 1374. If it does, we must determine whether a limiting construction may be imposed. See id. at 842, 827 P.2d 1374.
Prohibition of Constitutionally Protected Activity
Pauling argues that the former second degree extortion statute, RCW 9A.56.130, prohibits constitutionally protected activity because it does not contain a wrongfulness element and is therefore overbroad; the Court of Appeals agreed. See Pauling, 108 Wash.App. at 454, 31 P.3d 47. The State concedes on appeal to this court that the statute "could be construed as reaching constitutionally protected speech" but only if interpreted in "an excessively broad fashion." Suppl. Br. of Pet'r at 4.
Certain speech is not protected. For example, threats that have a tendency to incite an immediate breach of the peace, i.e., fighting words, are not protected and may be regulated by the government. See Huff, 111 Wash.2d at 925, 767 P.2d 572 (citing Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)). "`Speech is often provocative and challenging.... [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (alteration in original) (quoting Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)); see also Huff, 111 Wash.2d at 925, 767 P.2d 572. Words creating an immediate panic are not protected speech. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919).
The Court of Appeals created a list of situations in which former RCW 9A.56.130 would prohibit legitimate threats.[2] An example is a threat by an expert witness that he or she will not testify until his or her fee is paid. Pauling, 108 Wash.App. at 453, 31 P.3d 47; see RCW 9A.04.110(25)(g). A consumer, who threatens a vendor that unless he is given a refund for a defective product he will complain to the Better Business Bureau, would be open for prosecution for extortion. Id.; see RCW 9A.04.110(25)(j). According to the Court of Appeals, this speech, although protected, would be subject to prosecution under the former extortion statute since there is no requirement that the threats be wrongful. Without this wrongfulness element, there is no limitation placed on the type of threat made, which, in turn, allows the State to prosecute individuals criminally for their use of protected speech. Accordingly, the Court of Appeals was correct in concluding that the former second degree extortion statute prohibits a real and substantial *336 amount of protected speech that the government may not infringe upon. See Pauling, 108 Wash.App. at 454, 31 P.3d 47.
Limiting Construction
Recognize Nexus
A statute will be invalidated only if the court is unable to limit sufficiently its standardless sweep by a limiting construction. City of Tacoma v. Luvene, 118 Wash.2d 826, 840, 827 P.2d 1374 (1992). The Court of Appeals concluded not only that former RCW 9A.56.130 is overbroad but also that it could not be saved by a limiting construction. Pauling, 108 Wash.App. at 452, 31 P.3d 47.
The Second Circuit interpreted the federal extortion statute in United States v. Jackson, 180 F.3d 55 (2d Cir.1999). Besides interpreting the language of that statute to require that a threat be wrongful, the court also noted, more generally, that not all threats to damage another's reputation are wrongful, even if the making of the threat is conditioned on the payment of money. Id. at 70. However, that court did perceive as inherently wrongful, a threat that has no nexus to a claim of right. Id. The court clarified:
There are significant differences between, on the one hand, threatened disclosures of such matters as consumer complaints and nonpayment of dues, as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right.
Id. (emphasis added). The court held, "where a threat of harm to a person's reputation seeks money or property to which the threatener does not have, and cannot reasonably believe she has, a claim of right, or where the threat has no nexus to a plausible claim of right, the threat is inherently wrongful...." Id. at 71 (emphasis added). Although a person might have a legal right to collect a judgment, there is no nexus between the exercise of that right and the threat to post embarrassing nude photos on the Internet. On the other hand, a person with a legal right to collect a judgment would have a nexus to a threat to institute garnishment proceedings.
The Court of Appeals discusses the Model Penal Code (MPC) extortion statute and notes that an affirmative defense akin to that found in the MPC would limit Washington's former extortion statute from infringing upon free speech. Pauling, 108 Wash.App. at 450-51, 31 P.3d 47. The MPC defense is equivalent to the nexus requirement discussed in Jackson. Like Washington's former extortion statute, the federal extortion statute does not contain this nexus requirement, nor does it contain an explicit wrongfulness requirement. See Jackson, 180 F.3d at 66. The Second Circuit inferred that "Congress considered threats to injure reputation to be inherently wrongful methods of obtaining money." Id. Noting that Congress had been inconsistent in its inclusion of the word "wrongful" in the criminal code's provisions dealing with extortion, the court stated that "in most sections where there is no definition and no use of adjectives such as `wrongful' or `unlawful,' such a concept seems nonetheless implicit." Id. at 67.[3] The Second Circuit interpreted the federal extortion statute to contain this nexus requirement. Id. at 70.
Here, limiting extortion to threats lacking a nexus between the threat and its objective would restrict application of the law to "inherently wrongful" threats. We therefore disagree with the Court of Appeals and hold that it is unnecessary to strike former RCW 9A.56.130 because we may impose a limiting construction in the form of a requirement that there be a "lack of nexus" that limits its application to only unprotected speech.
In the following Application section we discuss how the evidence in this case shows that there is a lack of nexus.
Application
Using the nexus limiting construction, Pauling's conduct constitutes second degree extortion. This case was a bench trial and Pauling does not challenge any of the facts adduced at trial. As such, they are *337 verities on this appeal. See City of Seattle v. Muldrew, 69 Wash.2d 877, 878, 420 P.2d 702 (1966). Based on those facts, the trial court concluded that Pauling knowingly and intentionally attempted to obtain the $5,000 judgment from Doe by threat and that such threat communicated to Doe an intent to continue to send the nude photos to friends, family, and neighbors. Clearly, there was no nexus between the threat to send nude photos to family and friends and the collection of a lawful judgment. This conduct is sufficient to establish the crime of extortion; Pauling's conviction can be upheld on the facts of the case.
Moreover, guilt for extortion does not pivot on whether the threatener is legally entitled to the property or services he is seeking. The focus of extortion is on the means used to obtain such property or services. Thus, Pauling's guilt turns on the fact that he intentionally threatened Doe with continued dissemination of the photos, knowing that his threats were made in order to extract the money from her, rather than turning on the fact that the $5,000 represented a valid judgment.
Title 6 of the Revised Code of Washington is entitled "Enforcement of Judgments" and provides the many ways by which one may execute on a valid judgment. See chs. 6.17-6.32 RCW. It is a foregone conclusion that Pauling's conduct or any of the other threats provided in RCW 9A.04.110(25), when intentionally made with no nexus to a claim of right, are not included in Title 6 as legal means of executing on a judgment. It would be no defense, under the statutory construction we take here, for Pauling to assert that his conduct was not extortionate solely because he was trying to collect a legal debt.
As a bench trial, this case does not require a remand because the record shows the trial court found, with respect to count one, that "[t]he content of the letter and the simultaneous sending of other photographs ... shows beyond a reasonable doubt that the defendant intended the money and the photographs be connected." Clerk's Papers at 41. With regard to count two, the trial court also expressly found the threats connected to obtaining the $5,000. These findings satisfy the nexus limiting construction. We therefore reverse the Court of Appeals and reinstate the judgment and sentence of the trial court.

CONCLUSION
The former second degree extortion statute, RCW 9A.56.130, lacks a requirement that the threat used to obtain the property or services of another be wrongful. As such, it violates the first amendment by prohibiting threats that are constitutionally protected speech. However, we are able to impose a limiting construction in the form of a "lack of nexus" requirement such that only those threats that bear no relation to a plausible claim of right to the property or services for which the threat was made will be considered extortionate. Such threats are inherently wrongful and are not protected speech. Under this construction, Pauling's conduct was extortionate; the Court of Appeals is reversed. The judgment and sentence of the trial court is reinstated.
ALEXANDER, C.J., and JOHNSON, MADSEN, BRIDGE, CHAMBERS and OWENS, JJ., and SMITH, J. Pro Tem.
SANDERS, J. (dissenting).
Our majority agrees with the Court of Appeals that former RCW 9A.56.130 (1975) is unconstitutionally overbroad for substantially intruding upon constitutionally protected speech. Notwithstanding, the majority reinstates the trial court judgment and sentence under this unconstitutionally overbroad statute because it purports to limit its standardless sweep by adding an element requiring the State to prove the threat has no nexus to a plausible claim of right. Majority at 336 (citing United States v. Jackson, 180 F.3d 55 (2d Cir.1999)). In so doing, however, the majority rewrites the statute by adding a wrongfulness element that is simply not present in the text.
The court interprets statutes so that all the language used is given effect and no portion is rendered meaningless or superfluous. City of Seattle v. Dep't of Labor & Indus., 136 Wash.2d 693, 698, 965 P.2d 619 (1998). When statutory language is clear, we *338 assume that the legislature "meant exactly what it said" and apply the plain language of the statute. Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997).
The plain language of RCW 9A.04.110 reveals the legislature did not limit second degree extortion to wrongful threats. The word "wrongful" occurs only in subsection (25)(h), which makes it a crime for an official "[t]o take wrongful action" in his or her official capacity "against anyone or anything, or wrongfully withhold official action, or cause such action or withholding;...." By importing the term "wrongful" to all sections of RCW 9A.04.110 the majority renders the use of that term in RCW 9A.04.110(25)(h) superfluous.
The majority's reliance on United States v. Jackson is therefore misplaced. There the term "wrongful" did not occur in any of the subsections of the statute under which the defendants were convicted, including a subsection prohibiting threats to kidnap or injure another. 18 U.S.C. § 875(b). Jackson reasoned:
The subsection itself contains no explicit wrongfulness requirement, and it parallels a subsection that prohibits, with intent to extort, a "threat to kidnap" a person, 18 U.S.C. § 875(b), and a "threat to injure the person of another," id. Given the inherent wrongfulness of kidnaping and assault, the parallelism of subsection (b)'s prohibitions with § 875(d)'s prohibition against threats to injure reputation or property may support an inference that Congress considered threats to injure reputation to be inherently wrongful methods of obtaining money. Such an inference would be consistent with the established principle that, when a threat is made to injure the reputation of another, the truth of the damaging allegations underlying the threat is not a defense to a charge of extortion under § 875(d).
180 F.3d at 66.
It is the province of the legislature, not the judiciary, to add a substantive element to a statutory crime.
I would affirm the Court of Appeals.
NOTES
[1] The second degree extortion statute has been amended in response to the Court of Appeals decision. Laws of 2002, ch. 47, § 2. It now reads, in relevant part: "[a] person is guilty of extortion in the second degree if he or she commits extortion by means of a wrongful threat as defined in RCW 9A.04.110(25)(d) through (j)." Id. (emphasis added). A statute is presumed to operate prospectively unless the legislature indicates that it is to operate retroactively. State v. T.K., 139 Wash.2d 320, 329, 987 P.2d 63 (1999). Thus, we confine our overbreadth analysis to the extortion statute in effect at the time of Pauling's offense.
[2] While this list is instructive, it iterates that under former RCW 9A.56.130 it would be extortion to threaten criminal prosecution to extract payment for damage done to property. Pauling, 108 Wash.App. at 453, 31 P.3d 47. Although threatening prosecution unless restitution is made for some damage to property is listed as a threat under RCW 9A.04.110(25)(d), it is a defense to prosecution of extortion if the accused had a reasonable belief that the threatened criminal charge was "true and that his sole purpose was to compel or induce the person threatened to take reasonable action to make good the wrong which was the subject of such threatened criminal charge." Former RCW 9A.56.130(2).
[3] Likewise, the use of "wrongful" in RCW 9A.04.110(25)(h) is not dispositive in this case.